**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CHONG LEE DAN,

                                        Plaintiff,

                    v.                                                  1:24-CV-01233
                                                                        (MAD/PJE)

STATE OF NEW YORK, et al.,

                                        Defendants.

**APPEARANCES:**

Chong Lee Dan
c/o Jan Levine
688 Rte. 20
Cairo, New York 12413
Plaintiff pro se

**PAUL J. EVANGELISTA**
**United States Magistrate Judge**

                        **REPORT-RECOMMENDATION & ORDER**

                            I.  **In Forma Pauperis**

        Plaintiff pro se Chong Lee Dan commenced this action on October 8, 2024, with

the filing of a complaint, and, in lieu of paying this Court's filing fee, an application for

leave to proceed in forma pauperis ("IFP").  *See* Dkt. Nos. 1, 2.   Plaintiff provides that

his income is $2000.00 per month, he has $3000.00 in savings, and his monthly

expenses total $145.00.   *See* Dkt. No. 2.  However, plaintiff states that his income has

"decreased to zero, except for work within walking distance."[1]  *Id.*  On balance,[2] the

---

[1] Plaintiff does not provide how much income he receives, if any, from "work within walking distance."
Dkt. No. 2.
[2] The undersigned observes that plaintiff paid the filing fee in another action he filed in this District, 1:25-
CV-0122 (MAD/PJE), *Dan v. Hochul*, commenced on January 27, 2025.  This Court has deemed these
cases related.  In *Dan v. Hochul*, plaintiff raises essentially identical claims against defendant Hochul that

undersigned concludes that plaintiff financially qualifies to proceed IFP.[3]  Next, plaintiff's complaint must be assessed pursuant to 28 U.S.C. §§ 1915, 1915A.[4]

## II.  Standard of Review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  At the pleading stage, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint.  *Kiobel v. Royal Dutch Petroleum Co*., 621 F.3d 111, 123 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 678).   However, the Court need not accept as true "legal conclusions." *Iqbal*, 556 U.S. at 678.  A pro se complaint is entitled to special solicitude and must be liberally construed, meaning that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Nevertheless, even where a plaintiff has paid the filing fee, a district court may dismiss the complaint sua sponte if it determines that it lacks subject matter jurisdiction or that the complaint is frivolous.  *See* Fed. R. Civ. P. 12(h)(3); *Fitzgerald v. First E. Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (per curiam); *see*

---

he raises against the defendants in this action, all arising from the same underlying incident.  A motion to dismiss is pending in that action.

[3]  Plaintiff is advised that, despite being granted IFP status for this action, he is still required to pay any costs or fees he may incur in connection with this action.

[4]  Despite the statutory language referring to incarcerated individuals, these requirements apply equally to non-prisoner pro se litigants seeking to proceed in forma pauperis.  *See* N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. §1915(e)(2) and 28 U.S.C. §1915A when an application to proceed in forma pauperis is filed.").

*Tyler v. Carter*, 151 F.R.D. 537 (S.D.N.Y. 1993), *aff'd*, 41 F.3d 1500 (2d Cir. 1994) ("The question is whether such claims asserted by a fee-paying plaintiff are subject to sua sponte dismissal by a district court under Rule 12(b)(6). I hold that they are.  A plaintiff asserting fantastic or delusional claims should not, by payment of a filing fee, obtain a license to consume limited judicial resources and put defendants to effort and expense. The policies arguing against sua sponte Rule 12(b)(6) dismissals do not apply in these circumstances.").  "An action is 'frivolous' when either: (1) 'the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy'; or (2) 'the claim is based on an indisputably meritless legal theory.'" *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)) (additional internal quotation marks and citations omitted).  Further, a complaint that is "so confused, ambiguous, vague[,] or otherwise unintelligible that its true substance, if any, is well disguised," fails to comply with Rule 8 [of the Federal Rules of Civil Procedure]." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).

The Court is required to construe pro se pleadings liberally and interpret them to raise the "strongest [claims] that they suggest."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted).  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural

and substantive law[.]" *Triestman*, 470 F.3d at 477 (internal citations, quotation marks, and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191-92 (2d Cir. 2008). "The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with . . . the Federal Rules of Civil Procedure." *Kastner v. Tri State Eye*, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994)).[5]

### III. **Discussion**

### A. **Complaint**[6]

In his thirty-two-page, type-written complaint, plaintiff seeks to sue the State of New York; County of Greene; Town of Cairo; Ryan Schrader, Deputy Sheriff, Green County Sheriff's Office, in his official and individual capacities; Kaitlyn Raynor, Deputy Sheriff, Greene County Sheriff's Office, in her official and individual capacities; Shawn Marriott, Sergeant, Greene County Sheriff's Office, in his official and individual capacities; Scott Christman, Sergeant, Greene County Sheriff's Office, in his official and individual capacities; Peter Kusminsky, Sheriff, Greene County Sheriff's Office, in his official and individual capacities; John Vandenburgh, owner of JR's Transmission; Mark J.F. Schroeder, New York State Department of Motor Vehicles employee, in his official and individual capacities; Shawn S. Groden, County Administrator, Greene County, in his official and individual capacities; John Watts, Town Supervisor, Town of Cairo, in his official and individual capacities; Edward I. Kaplan, County Attorney, Greene County, in his official and individual capacities; Joseph Stanzione, District Attorney, Greene

---

[5]  Unless otherwise noted, the Court has provided plaintiff copies of the unpublished cases cited herein.
[6]  The Court's citation to this document is to the pagination located at the header of each page, generated by the Court's electronic filing and case management software.

County, in his official and individual capacities; Jennifer Sandleitner, Assistant District Attorney, Greene County, in her official and individual capacities; and Angelo F. Scaturro, Public Defender, Greene County, in his official and individual capacities. *See* Compl. at 3-6.

Plaintiff's complaint arises out of an August 19, 2023, incident. *See generally* Compl. Plaintiff was parked at a gas station in Cairo, New York. *See id.* at 6. He contends that, as he was "preparing to enter" the gas station's convenience store, defendant Ryan Schrader, of the Greene County Sheriff's Office, "initiated an encounter concerning an expired temporary Maryland tag on Plaintiff's private property, the subject of this civil rights complaint." *Id.* Plaintiff states that his vehicle, a 2005 Chevrolet Astro, "was purchased by Plaintiff as private property for persona, family, or household goods or consumer goods, not for commercial use, profit, or gain." *Id.* Plaintiff expressed his belief to defendant Schrader that he had "no need" for a "valid tag" and gave Schrader

> fair notice by public record as filed at the Caldwell County, NC Register of Deeds, BK 2095, PG 420-421. That document's text presented here as being material to this encounter ab initio of the legal requirement to operate the term "motor vehicle" to a definition pursuant to the US Constitutional and federal laws as follows. Federal regulations recognize traveling and driving are different activities at 40 CFR 395.1(j)(1) with the phraseology of "traveling but not driving." The term "drive" is ranching parlance to drive cattle to market, a commercial activity. The United States Supreme Court case, Interstate Commerce Commission vs. Brimson 154 US 447 recognized the state's authority to regulate the privilege of using public roads for commercial activity, as in "driving." It recognized the state's authority did not extend to the right of "traveling" the public roads when tending to the ordinary activities of daily living. "Power given to Congress to regulate interstate commerce does not carry with it authority to destroy or impair those fundamental guarantees of personal rights that are recognized by the Constitution as inheriting the freedom of the citizen." The United States Supreme Court case recognizes travel as a Constitutionally protected right while driving is a privilege.

*Id.* at 7.

Plaintiff contends that "[t]he United States Code reflects this protected right by requiring commercial activity as an element in defining the term 'motor vehicle' 18 USC31 a (6)."  Compl. at 7.  He further provides, "[t]he United States Code elaborates on 'commercial activity' 18 USC31 a (10)."  *Id.*  Plaintiff contends that "a 'motor vehicle' is defined to the activity of moving passengers or property for a fare, fee, rate or other compensation" which "must be in evidence for something to be deemed a motor vehicle and subject to the motor vehicle code."  *Id.* at 8.  Plaintiff states that he "believe[s] that anyone with an oath to support the Federal Constitution that fails to operate the term 'motor vehicle' as Constitutionally defined commits perjury of that oath and acts against Me without authority."  *Id.*

Plaintiff expressed his viewpoint to defendant Schrader who had also asked plaintiff to show his driver's license, and plaintiff told Schrader that he did not have one as he was not required to have one.  *See* Compl. at 8-9.  At some point in the interaction between plaintiff and defendant Schrader, defendant Raynor arrived.  *See id.* at 10.  Plaintiff contends that Schrader told him that to drive in New York State, he needs a valid driver's license and vehicle registration, which he does not have.  *See id.* at 10.  Defendant Schrader issued plaintiff "two citations, one for unlicensed op and one for unregistered vehicle, all right?"  *Id.* at 11.  Defendant Schradrer stated that because of a lack of a valid license or registration, is vehicle would be towed.  *See id.*  Plaintiff contends that Schradrer confirmed that he informed his supervisor, defendant Shawn Marriott, "of the public record, the issue of New York State Uniform Traffic Tickets and the impoundment of the Plaintiff's private property."  *Id.*

Plaintiff states that the impoundment of his "private property left him without a safe place to lay his head at night and without a means to travel, stranding him in Cairo, NY." Compl. at 12. Plaintiff states that he is being forced to stay at a tent on a friend's property which is an "emotionally stressful living situation" which is "compromising the privacy of these friends." *Id.* Plaintiff further provides that the impoundment of his vehicle "interfered with the Plaintiff's ability to support himself in maintaining his chosen lifestyle, compromising his mental, spiritual, and physical well-being." *Id.* His "economic situation and lifestyle before the encounter were marginal but sustainable; the Defendants' seizure of his private property exacerbated this situation." *Id.*

Plaintiff's vehicle was towed to JR's Transmission, which plaintiff claims is operated by John VanDenburgh. *See* Compl. at 13. Plaintiff pleaded not guilty to the traffic tickets at the Town of Cairo Municipal Court, "requested a supporting deposition," "filed a motion for dismissal, a copy of the public record that Deputy Schrader received, *see* Line 34., a notice on US attorney and an affidavit of sovereign status with the Cairo Municipal Court clerk." *Id.* Plaintiff provides that his case from the Cairo Municipal Court was dismissed in its entirety "for lack of a supporting deposition," which plaintiff believes did not give him

> a fair opportunity to present the facts of the case with the continued application of the transportation code to Plaintiff's private property, insistence on payment of impoundment fees, and forced contracts with the New York State Department of Motor Vehicles to operate commercially as a condition for the return of the private property.

Id. at 14.

Plaintiff provides that JR's Transmission would not release his vehicle without payment of the tow and impound fees. *See* Compl. at 14. Plaintiff sought "relief" from

7

the Cairo Municipal Court and "was told there was nothing they could do to assist with gaining the release of the Plaintiff's private property." *Id.* Plaintiff sought similar "relief from the public defender, district attorney, and county attorney" in Greene County "without results." *Id.* "Of all the County of Greene officials and agents contacted, the Plaintiff was informed of the requirement to pay the impound fees and present a valid driver's license." *Id.* Plaintiff called the Greene County Sheriff's Office. *Id.* Christman "claimed he did not understand why the charges had been dismissed," "insisted on applying a definition of the term 'motor vehicle' other than the United States Code defines it to the Plaintiff and his private property," and "declined to discuss the definitions of driving and traveling as given in the Code of Federal Regulations." *Id.* Plaintiff "notified" the County Administrator, Public Defender, District Attorney, County Attorney, Sheriff's Office, "all officials of the County of Greene," and the Town of Cairo Supervisor by e-mail on May 11, 2024, but plaintiff did not receive any response. *Id.* at 15.

Plaintiff states "Defendants' failure to provide a supporting deposition created a legal problem, as in giving Plaintiff a dismissal of all charges while the Defendants continued the deprivation of Plaintiff's rights to private property and substantive and procedural due process." Compl. at 15.

Plaintiff attended "a 50-H hearing at the Greene County Office Building with Defendant Edward I. Kaplan and Attorney James j. Burns of Murphy Burns LLP." Compl. at 15. Plaintiff states that he "recognized that Mr. Burns had in his possession a copy of the Notice of Claim by Administrative Process mailed certified to ten of the Defendants." *Id.* Plaintiff states that on June 25, 2024, he "filed an affidavit into the

public record at the Greene County Clerk's Office . . . the Defendants being made aware of this public record by a certified mailing alleging the Defendants are engaged in a seditious conspiracy to overthrow the Constitution and violate his God-given rights."  *Id.* Plaintiff did not receive a response to this notice.  *Id.*

Plaintiff purports to bring this action pursuant to 42 U.S.C. § 1983, 42 U.S.C. §1985, 42 U.S.C. § 1986, the Administrative Procedure Act of 1946, New York State Penal Code,[7] and New York State common[8] law.[9]

More specifically, plaintiff states that, pursuant to 42 U.S.C. § 1983, "defendants are jointly and severally liable for damages caused by depriving Plaintiff of rights protected by the United States Constitution's 4th, 5th, and 14th Amendments under color of the New York State Vehicle and Traffic Law."  Compl. at 18.  He also contends that defendants engaged in malicious prosecution in violation of section 1983.  *See* Compl. at 19-20.  Plaintiff contends that defendants violated these rights by using/applying a definition of the term "motor vehicle" other than how he believes it is defined and interpreted in the United States Code and Code of Federal Regulations.  Compl. at 17-18.  Plaintiff contends that defendant VanDenburgh "jointly engaged with State officials in the action, was acting under the color of New York State Vehicle and Traffic Law" and he is not "require[d] to be an officer of the State, it is enough that he was a willing participant."  *Id.* at 17.

---

[7] Plaintiff seeks to proceed on the following claims under New York State Penal Code: Robbery in the Second Degree, Coercion in the Third Degree, and Official Misconduct.  *See* Compl. at 24-28.

[8]  Plaintiff indicates that he seeks to bring the following state law claims pursuant to this Court's supplemental jurisdiction: false imprisonment, libel, slander, and negligent infliction of emotional distress. *See* Compl. at 25-28, 30-31.

[9]  Plaintiff states, in a "title" on the first page of his complaint, that the action is commenced pursuant to, among things, "The United States Constitution's Spending Clause, Article I, Section 8, Clause 1."  Compl. at 1.

Plaintiff contends that, pursuant to 42 U.S.C. § 1985, defendants "conspired to deprive the Plaintiff of his private property rights by operating the term 'motor vehicle' other than as defined by the United States code."  Compl. at 18.  Plaintiff further contends that, in an effort to "conceal this conspiracy, Defendant Ryan Schrader, a member of and influenced by this conspiracy failed to provide a supporting deposition" and "failed to keep his verbal contract to allow Plaintiff to 'explain all this to the judge and let the judge figure it out.'"  *Id.*  Plaintiff states that defendants "conspired with the objective of accomplishing the generation of additional revenue for the State of New York, the County of Greene, the Town of Cairo, and JR's Transmission depending on how the revenue and fines are to be split."  *Id.*   He contends defendants all "agreed/conspired to subject noncommercial users of New York Public roads, the Plaintiff, to the unauthorized application of the United States Constitution's interstate commerce clause.  This operates as a constructive fraud and an abuse of power by the Defendants."  *Id.* at 18.

Plaintiff seeks to sue all defendants pursuant to 42 U.S.C. § 1986 for "action for neglect to prevent" insofar as they failed "to prevent operating the term 'motor vehicle' other than as defined by the United States Code as the direct and proximate cause for the callous disregard for the deprivation of the Plaintiff's federally protected rights" and, thus, should be held "liable for neglect to prevent the initial and continued damages and deprivation of the Plaintiff's rights as protected by the United States Constitution's 4th, 5th, and 14th Amendments by operating the term 'motor vehicle' other than as defined by the United States Code."  Compl. at 20-21.  Plaintiff argues that all defendants "were notified of the deprivation of the Plaintiff's rights initiated by and of the continuance of

their neglect in preventing the operation of the term 'motor vehicle' other than as defined by the United States code." *Id.* "That Defendants, especially those in positions of superiority and power, given notice of their illegal conduct and a reasonable opportunity to correct it would continue in this illegal conduct is egregious and outrageous for public officials." *Id.*

Plaintiff contends that defendants violated 18 U.S.C. § 1589[10] and the Thirteenth Amendment by requiring him to participate in "forced labor." Compl. at 21. He argues that defendants' "unauthorized application of the Constitution's interstate commerce clause, are attempting to extract a use tax from the Plaintiff in the form of a driver's license and registration, when not legally required, operate as forced labor/involuntary servitude" and plaintiff is "partially of African descent and, because of the history of the enslavement of black people in America takes extreme issue with the subject of forced labor." *Id.* Plaintiff contends that defendants, "with deliberate indifference, have failed to observe the United States Constitution's 13th Amendment's prohibition of slavery and involuntary servitude." *Id.*

Plaintiff seeks to sue State of New York, County of Greene, and Town of Cairo for "deprivation of substantive due process" pursuant to *Monell*. Compl. at 22-24. He contends that "Defendants acted pursuant to one or more interrelated de facto policies (even if not official written edicts), practices, and customs of civil rights violations and unconstitutional practices of the State of New York, County of Greene, and Town of

---

[10] 18 U.S.C. § 1589 is a criminal code, relating to persons who "knowingly provides or obtains the labor or services of a person" by, among other things, force, threats of force, physical restraint, threats of physical restraint, means of serious harm or threats of serious harm to that person or another, "by means of the abuse or threatened abuse of law or legal process," or "by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

Cairo, see Line 122."[11]  Compl. at 22.  Plaintiff alleges that "their policy, practice, and custom" of "approv[ing], authoriz[ing], and acquiesce[ing] in the unlawful and unconstitutional conduct of defining the term 'motor vehicle' by a definition other than the definition given by the United States Code by its respective employees and agents" violates his constitutional rights under the Fourth, Fifth, Thirteenth, and Fourteenth Amendments.  Compl. at 22-24.  Plaintiff further alleges that "the Corporate Defendants" failed to train defendant Schrader in "the authorized application of the United States Constitution's interstate commerce clause."  *Id.*  Plaintiff additionally argues that defendant Shrader acted with deliberate indifference to his constitutional rights by failing to enact on his "duty of care to investigate Plaintiff's claim of 'no requirement' for a valid registration as evidence of passengers or property being moved for any fare, fee, rate charge, or other consideration as the element that triggers that requirement."  *Id.* at 29.

Next, plaintiff contends that "[t]he Corporate Defendants" violated the Administrative Procedure Act, which he cites as 5 U.S.C. § 551 et seq. (1946).  Compl. at 16.  Plaintiff provides that he "is challenging the Corporate Defendants' right to enforce their policy or guidance rules on the Plaintiff without substantive due process and an order from a Judicial Judge."  *Id.*  Plaintiff "demands a Judicial review of the Corporate Defendants' misconduct for abuse of discretion, as authorized by the United States Administrative Procedure Act of 1946."  *Id.*

Plaintiff further seeks to proceed under New York state law for libel, slander, and intentional infliction of emotional distress.  *See* Compl. at 27-28.  Plaintiff also seeks to

---

[11]  Line 122 of the complaint states "This federal law was 'Enacted into law in 1946, and the key to this law is that it states that the government's administrative policies must be in harmony with the Constitution."  Compl. at 16, ¶122).

proceed under New York State common law for false imprisonment. *See* Compl. at 25. Plaintiff states that defendant Schrader "without authority, confined Plaintiff to the area behind Plaintiff's private property against his will under the threat of assault and battery." Compl. at 25 (citing line 47, Compl. at 9) ("Defendant Ryan Schrader walked back to the Sheriff's cruiser, ordering the Plaintiff to confine himself to an area in the rear of the private property. 'Sit right there for a second.'  the Plaintiff complied for apprehension of being physically assaulted for failure to do so.").[12]

Plaintiff also seeks to proceed pursuant to several state criminal laws, Robbery in the Second Degree (New York Penal Code § 160.10); Coercion in the third degree, New York Penal Code § 136.60(2); Official Misconduct, New York Penal Code 195.00; Assault, New York Penal Code § 120 (potential for assault).  Compl. at 24-25, 28-29.

Plaintiff seeks compensatory damages, totaling $1,200,000 from the State of New York, $600,000 from Greene County, $300,000 from Town of Cairo, $200,000 from Ryan Schrader, $200,000 From Kaitlyn Raynor, $200,000 from Shawn Marriott, $200,000 from Scott Christman, $200,000 from Peter J. Kusminsky, $200,000 from Mark J.F. Schroeder, $300,000 From Shaun S. Groden, $300,000 from Jason Watts, $300,000 from Edward I. Kaplan, $300,000 from Joseph Stanzione, $300,000 from Jennifer Sandleitner, $300,000 from Angelo F. Scaturro, and $100,000 from John Vandenburgh. *Id.* at 31-32. Plaintiff also seeks "[d]eclaratory and injunctive relief against the State of New York, County of Greene, And Town of Cairo's enjoining policies, practices, and customs to encourage the operating of the term 'motor vehicle' by no other definition than the definition given by the United States Code" and "ordering

---

[12]  Plaintiff states that Schrader returned from his cruiser "[a] minute and a half later."  Compl. at 9.

the State of New York, County of Greene, and Town of Cairo "to institute policies, procedures, and training for law enforcement agencies of these entities to bring them into compliance with constitutional standards." *Id.* at 32. Plaintiff further requests "attorney's fees and the cost of this action pursuant to 42 USC 1988." Id.

B. **Analysis**

First, plaintiff's claims against the State of New York are barred by sovereign immunity. The law is well established that under the Eleventh Amendment to the United States Constitution, the State of New York and its subdivisions are immune from suits brought under Section 1983. *See Pennhurst State Sch. & Hosp. v. Haldeman*, 465 U.S. 89, 98 (1984) (citing *Hans v. Louisiana*, 134 U.S. 1, 11 (1890); *see also Quern v. Jordan*, 440 U.S. 332, 340-41 (1979) (applying Eleventh Amendment immunity to claims under § 1983). "New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983." *Id.* "Sovereign immunity bars not only suits against states themselves, but also suits for damages against state officials acting in their official capacities." *Chapman v. City of Albany*, No. 1:23-CV-686 (LEK/PJE), 2025 WL 295011, at *5 (N.D.N.Y. Jan. 24, 2025). Thus, plaintiff's claims for monetary damages against the following state officials in their official capacities also must be dismissed for sovereign immunity, Ryan Schrader, Kaitlyn Raynor, Shawn Marriott, Peter J. Kusminsky, Mark J.F. Schroeder, Shawn S. Groden, Jason Watts, Edward Kaplan, Joseph Stanzione, Jennifer Sandleitner, Angelo Scaturro, and Scott Christman. *See id.*; *see also Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter

jurisdiction[.]"); 18 U.S.C. § 1915A(b)(1) ("On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint – (2) seeks monetary relief from a defendant who is immune from such relief.").

Second, plaintiff's complaint must otherwise be dismissed for failure to state a claim upon which relief can be granted and frivolity. *See* 28 U.S.C. § 1915A(b)(1). Plaintiff's complaint fails to set forth any cognizable constitutional claim. Plaintiff is far from the first person to attempt to get out of the requirements to have a valid driver's license or vehicle registration by arguing that state vehicle and traffic laws violate his constitutional rights nor is he the first to specifically contend that the definition of motor vehicle in 18 U.S.C. § 31 applies only to commercial use of motor vehicles or that 49 C.F.R. § 395 recognizes a difference between traveling or driving and that such statute and regulation mean that their particular use of their vehicle is exempt from the license and/or registration requirements. *See generally* Compl. However, as will be explained below, plaintiff's arguments based on this faulty premise, like for those who came before him, are without merit and must be dismissed.

The Supreme Court of the United States has made clear,

In the absence of national legislation covering the subject, a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles, [ ]those moving in interstate commerce as well as others. And to this end it may require the registration of such vehicles and the licensing of their drivers, charging therefor reasonable fees graduated according to the horse-power of the engines,[ ]a practical measure of size, speed, and difficulty of control. This is but an exercise of the police power uniformly recognized as belonging to the states and essential to the preservation of the health, safety, and comfort of their citizens; and it does not constitute a direct and material burden on interstate commerce.

*Ali v. Siwek*, No. 23-CV-354-LJV, 2023 WL 9184481, at *3 (W.D.N.Y. Dec. 18, 2023), *appeal dismissed sub nom. Ali v. Mathewson*, No. 24-52, 2024 WL 5295532 (2d Cir. July 26, 2024) (quoting *Hendrick v. Maryland*, 235 U.S. 610, 622 (1915) (alterations omitted)).  It is well-settled that "the states may enact laws requiring owners of motor vehicles to register those vehicles."   *Ali*, 2023 WL 9184481, at *3; *see also Ali*, 2023 WL 9184481, at *3 n.4 (citing *Munz v. Harnett*, 6 F. Supp. 158, 159-60 (S.D.N.Y. 1933) ( "[A] state as an exercise of the police power may prescribe uniform regulations covering the ownership and operation" of motor vehicles and observing that "there cannot be the slightest doubt of the validity of [the] requirement" that motor vehicles be registered) (citing, *inter alia*, *Hendrick*, 235 U.S. at 622).

In *Ali*, the plaintiff contended, as relevant here, that the defendants were attempting to "force him into a contract" and violating his rights by requiring him to pay a fee before returning his impounded vehicle.  2023 WL 9184481, at *2-3.  Like plaintiff here, the plaintiff in *Ali* believed that the vehicle and traffic laws did not apply to him or his situation.  Although plaintiff here attempts to ground his belief in constitutional and statutory interpretation, rather than contractual terms as in *Ali*, the necessary outcome does not differ.  *See id.* at *3 n.4 (citing *Munz v. Harnett*, 6 F. Supp. 158, 159-60 (S.D.N.Y 1933); *see also Spector Motor Serv. v. Walsh*, 139 F.2d 809, 814-15 (2d Cir. 1943) ("First, we should note the now established and undenied power of a state to impose a registration or license fee on those using motor vehicles in the state . . . .") (collecting cases)); *Scalpi v. Town of East Fishkill*, No. 14-CV-2126 (KMK), 2016 WL 831956, at *5 (S.D.N.Y. Feb. 29, 2016) *appeal dismissed* 16-1299 (2d Cir. June 3, 2016) ("[T]he State's authority to regulate the use of its roads is well established.") (collecting

cases); *Laine v. City of Livermore*, 695 F. App'x 260, 261 (9th Cir. 2017) ("Contrary to [the plaintiff's] contentions, vehicle registration requirements are not unconstitutional." (citing Hendrick)); *Perkins v. Ivey*, 772 F. App'x 245, 246 (5th Cir. 2019) (quoting *Hendrick*, 235 U.S. at 622) ("The Supreme Court ruled long ago that states may regulate the operation 'of all motor vehicles' that drive within their borders, and 'may require the registration of such vehicles and the licensing of their drivers' pursuant to their constitutionally protected police power."); *Earl v. Harris*, No. 23-1063, 2023 WL 3580700, at *1 (3d Cir. May 22, 2023) (noting that "the Supreme Court has long recognized a state's right to use its police powers to 'require the registration of [motor] vehicles and the licensing of their drivers'" and finding the plaintiffs' challenge to that proposition to be "baseless") (quoting *Hendrick*, 235 U.S. at 622).

Plaintiff attempts to argue that there is a difference, grounded in statute and federal regulations, between driving and traveling, designating the former a privilege and the latter a Constitutionally-protected right.  *See generally* Compl.  However, plaintiff arguments are frivolous. *See Allen v. N.Y. State Dep't of Motor Vehicles*, 991 N.Y.S. 2d 701, 723 (N.Y. App. Div. 2014) (noting that "[the Constitution] does not recognize a fundamental 'right to drive'"); *see also Crandall v. New York State Dep't of Motor Vehicles*, No. 1:10-CV-918 (GLS/RFT), 2011 WL 2295742, at *2 (N.D.N.Y. June 8, 2011) (holding that there is no fundamental right to operate a motor vehicle; rather, it "is a revocable privilege that is granted upon compliance with statutory licensing provisions.").

Plaintiff takes issue with the fact that 18 U.S.C. § 31's definition of "motor vehicle" is specific to uses where the operator is engaging in a commercial activity.  He asserts

that, because he was not engaging in a commercial activity while operating his motor vehicle, he is exempt from any licensing or registration requirements.  However, 18 USC § 31 is "a criminal statute which explicitly states, "In this chapter, the following definitions apply . . . . There is no indication that such definitions, which are presented in a criminal context, would apply outside the context of 18 U.S.C. § 31 . . . . " *In re Guancione*, No. C-12-3910 EMC, 2012 WL 4120243, at *2 (N.D. Cal. Sept. 18, 2012); *see also Leith v. State of Missouri Highway Patrol*, No. 05-4399-CV-SFJG, 2007 WL 869508, at *2 (W.D. Mo. Mar. 20, 2007) ("Plaintiff wrongly believes that he may drive his unregistered vehicle without a valid driver's license and without a title on the public highways in Missouri. Plaintiff argues that he is not subject to Missouri licensing laws because his car is not a motor vehicle given that it is not used in commerce."; "[T]he motor vehicle definitions used in . . . 18 U.S.C. § 31 do not apply to plaintiff."); *Williams v. City of Battle Creek*, No. 25-CV-10270, 2025 WL 714441, at *3 (E.D. Mich. Mar. 5, 2025) ("Title 18 is not a source of any general right to travel."; "Critically, Title 18 does not cover the entire subject of motor vehicle regulation. Instead, sections of this Title criminalize select and narrowly defined conduct as it relates to commercial vehicles. Title 18 does not address state vehicle registration requirements, much less preempt the Michigan Vehicle Code.").  Thus, to the extent plaintiff suggests that 18 U.S.C. § 31 or any other portion of Title 18 applies here to exempt him from the state vehicle and traffic laws, such claims fail to state a claim upon which relief can be granted and are frivolous.

Similarly, plaintiff cites 49 C.F.R. § 395.1(j)(1) to argue that "federal regulations recognize traveling and driving" as different activities. Compl. at 7. However,

> 49 C.F.R. § 390.1 et seq., [] sets definitions for the Federal Motor Carrier Safety Administration's promulgated regulations for commercial vehicles.

Notably, each of these definition-providing statutes explicitly states that the definitions therein apply only to their respective statutory chapters or subchapters, not the entirety of the United States Code []or to any state's laws. *See* 18 U.S.C. § 31(a)(6) (noting that the definitions therein apply only to "this chapter," Chapter 2 – Aircraft and Motor Vehicles (§§ 31 – 40A)); 49 C.F.R. § 390.1 (noting that the definitions therein apply only to "this subchapter," "Subchapter B – Federal Motor Carrier Safety Regulations"). Congress has thus expressed an intent that these definitions be construed narrowly, rather than as a substitute for any possible state statutory definitions. More importantly, neither of these statutes – each covering the narrow topic of driving commercial vehicles – actually conflicts with how the State applies or enforces its driver's license and vehicle registration requirements against private individuals like [the plaintiff].

*Redman v. Sununu*, No. 21-CV-267-JL, 2021 WL 6880649, at *10 (D.N.H. Nov. 24, 2021), *report and recommendation adopted sub nom. Redman v. Governor*, No. 21-CV-267-JL, 2022 WL 410072 (D.N.H. Feb. 10, 2022).  Thus, to the extent plaintiff contends that 49 C.F.R. 395.1(j)(1) or any other section of the CFR supports his contention that he was traveling but not driving, and, thus, exempt from the licensing and registration requirements, those arguments are entirely without merit and are frivolous and fail to state a basis for any constitutional violation.[13]

---

[13]    Further, the 131-year-old United States Supreme Court case on which plaintiff purports to rely, *Interstate Commerce Commission v. Brimson*, 154 U.S. 447 (1894), has never been interpreted by any court of law to hold what plaintiff states it does.  *See* Compl. at 7.  This case does not recognize a constitutional, fundamental right to drive or address a meaningful distinction between traveling and driving or operating a motor vehicle for "private" use, as it applies in this context.  Indeed, it does not provide any support for plaintiff's arguments.  *See Gen. Tobacco & Grocery Co. v. Fleming*, 125 F.2d 596, 599 (6th Cir. 1942) ("'In *Interstate Commerce Clause v. Brimson*, 154 U.S. 447 . . . 'The inquiry whether a witness before the commission is bound to answer a particular question propounded to him, or to produce books, papers, etc., in his possession and called for by that body, is one that cannot be committed to a subordinate administrative or executive tribunal for final determination. Moreover, the opinion asserts that the regulatory power of Congress over interstate commerce carries no power to destroy or impair fundamental guarantees of personal rights recognized by the Constitution as inhering in the freedom of the citizen. It was held that a citizen, in a proceeding brought in a Circuit Court of the United States by the Interstate Commerce Commission to compel him to answer particular questions and to produce particular books in his possession, was free to contend before that court that 'he was not legally bound to produce the books, papers, etc., ordered to be produced; or that neither the questions propounded nor the books, papers, etc., called for relate to the particular matter under investigation, nor to any matter which the Commission is entitled under the Constitution or laws to investigate.'").  Plaintiff has provided no valid authority supporting his position.  *See, e.g.*, *Matthew v. Honish*, 223 F. App'x 563 (7th Cir. 2007) (finding "meritless" the pro se plaintiff's argument that state requirements of licensure and registration violated his

In sum, there is no federal law or regulation differentiating between travel and driving that is applicable in plaintiff's situation and no Supreme Court precedent supporting plaintiff's position.  Instead, there is well-settled law stating that a state has a right to enforce its vehicle and traffic laws requiring licensing and registration of motor vehicles.  It is clear that no constitutional right was violated by any requirement that he be required to have a valid license and registration to operate his motor vehicle.  Thus, plaintiff's constitutional rights were not violated by this requirement nor the requirement that he pay the impound fee for the return of his vehicle.

As there is no underlying constitutional violation, there can be no conspiracy to commit a constitutional violation.  *See Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) ("A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right. Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights.") (internal citation omitted).  Moreover, to proceed pursuant to Section 1985 for a conspiracy to violate one's constitutional rights, a plaintiff must make a showing of a "class-based animus," which plaintiff has not alleged here.  *Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc.*, 968 F.2d 286, 291 (2d Cir. 1992).  "Section 1986 addresses "neglect to prevent" conspiracies under § 1985. Thus, where no cause of action lies under § 1985, no cause of action can lie under § 1986."

---

right to travel as there is no fundamental right to drive.  That the plaintiff contended that his inability to have a driver's license denied him "'a single mode of transportation- in a car driven by himself . . . does not impermissibly burden his right to travel.") (quoting *Miller v. Reed*, 176 F. 3d 1202, 1206-06 (9th Cir. 1999)).

*Dill v. Vill. of Gowanda*, 952 F. Supp. 989, 995 (W.D.N.Y. 1997) (quoting *Levy v. City of New York*, 726 F.Supp. 1446 (S.D.N.Y.1989)).  Accordingly, it is recommended that plaintiff's section 1983 claims, section 1985 conspiracy claims, and section 1986 "neglect to prevent" claims against all defendants be dismissed for failure to state a claim upon which relief can be granted and frivolity.

"[T]here is no requirement that a court address every single potential ground for dismissal where it is clear that a claim should be dismissed"; however, the undersigned would be remiss not to note that there exist several additional grounds for dismissal. *Gerken v. Gordon*, 1:24-CV-0435 (MAD/CFH), 2024 WL 4608307, at *5 (N.D.N.Y. Oct. 29, 2024) (quoting *Dees v. Zurlo*, No. 1:24-CV-1 (MAD/DJS), 2024 WL 2291701, at *13 (N.D.N.Y. May 21, 2024) (citing, *inter alia*, *Curtis v. Greenberg*, No. 22-252-CV, 2023 WL 6324324, *2 n.3 (2d Cir. Sept. 29, 2023)). Thus, they will be mentioned briefly for the sake of completeness of review.

Plaintiff has failed to demonstrate that John Vandenburgh, owner of JR Transmission – where plaintiff's vehicle was apparently towed and impounded – is a state actor.  Nothing in plaintiff's complaint plausibly suggests he was acting under the color of state law.  In addition to any claim against him being subject to dismissal for failure to state a claim and frivolity, any claims against Vandenburgh brought under section 1983 may be dismissed for this reason.  Plaintiff contends, for purposes of his section 1983 claims against him that Vandenburgh "jointly engaged with state officials in the action, was acting under the color of the New York State Vehicle and traffic law" and contends that "under color of law doesn't require Defendant Jon VanDenburgh to be an officer of the State, it is enough that he was a willing participant."  Compl. at 17.

Although plaintiff correctly identifies this principle, his claim fails because there can be no conspiracy to commit a violation of constitutional rights if there is no violation of a constitutional right.  Further, plaintiff proffers no support for any argument that Vandenburgh was engaged in a conspiracy with state actors merely because plaintiff's vehicle was transported to his garage, and he requires a fee to release the vehicle.

To the extent plaintiff seeks to bring a claim for malicious prosecution against all defendants pursuant to section 1983,[14] Compl. at 19-20,

> [t]here is a rebuttable presumption that criminal proceedings are initiated by prosecutors, not arresting officers. *See Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 228 (S.D.N.Y. 2006) (citation omitted).  Nearly all cases in which law enforcement officers were found to have initiated or continued a prosecution for purposes of a malicious prosecution claim involve officers who provided knowingly false and/or fabricated evidence to unwitting prosecutors.  *Joyner v. County of Cayuga*, No. 5:20-CV-60 (MAD/TWD), 2020 WL 1904088, at *8 (N.D.N.Y. Apr. 17, 2020) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *Ramos v. City of New York*, 285 A.D.2d 284, 299 (1st Dep't 2001)).

*Pittman v. Edwards*, No. 5:20-CV-319 (GLS/ATB), 2020 WL 4194479, at *5 (N.D.N.Y. June 22, 2020), *report and recommendation adopted*, No. 5:20-CV-319 (GLS/ATB), 2020 WL 4192547 (N.D.N.Y. July 21, 2020).  To assert a claim for malicious prosecution under the Fourth Amendment, a plaintiff must demonstrate he was arrested without probable cause as there can be no federal civil rights claim for false arrest where the involved officers had probable cause.  *See, e.g.*, *Singer v. Fulton Cnty. Sheriff*, 63 F.3d

---

[14] Although plaintiff does not explicitly state the Constitutional amendment pursuant to which he seeks relief, a claim for false arrest under section 1983 is brought for violations of the Fourth Amendment.  *See Oakes v. Cooke*, 858 F. Supp. 330, 335 (N.D.N.Y. 1994)(" In *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), the Supreme Court acknowledged the validity of section 1983 malicious prosecution claims and held that the right to be free from prosecution without probable cause, which forms the very essence of a malicious prosecution claim, arises under the Fourth Amendment.").

110, 118-19 (2d Cir.1995), *cert. denied*, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996); *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

Plaintiff was ticketed for operating a vehicle without a license and without valid registration. *See generally* Compl. He concedes that he did not have a valid license or registration, but contends they were not required. *See id*. at 8-11. Thus, in addition to failing to state a cause of action due to a lack of any constitutional violation, plaintiff has failed to demonstrate that defendants did not have probable cause to ticket him for these violations of the vehicle and traffic law. Thus, his malicious prosecution claim may also be dismissed on for this reason.

Further, plaintiff fails to explain how defendants, only two of whom are prosecutors – Stanzione and Sandleitner[15] – were personally involved in any malicious prosecution. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).

Plaintiff's claims that the vehicle and traffic laws, or the defendants' application of these laws to his use of his motor vehicle, violate the Thirteenth Amendment's prohibition against slavery and involuntary servitude also fails to state a claim upon which relief can be granted and frivolity. Plaintiff contends that because defendants, collectively, seek to "extract a use tax from the Plaintiff in the form of a driver's license

---

[15] Even if plaintiff were, *arguendo*, able to overcome all other defects, Stanzione and Sandleitner likely would also be protected by absolute prosecutorial immunity. *See Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987); *see also Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995).

and registration, when not legally required," this amounts to "forced labor/involuntary servitude." Compl. at 21. As this argument is premised upon the false belief that defendants cannot validly enforce the vehicle and traffic law or that such laws are violative of his constitutional rights, this claim fails. Further, to the extent plaintiff seeks to proceed pursuant to 18 U.S.C. § 1589, this is a criminal statute that has no applicability to plaintiff's claims here. Plaintiff has no authority to compel or enforce federal criminal law as there exists no private right of action to enforce this statute. *See see also McFadden v. Ortiz*, 5:12-CV-1244 (MAD/ATB), 2013 WL 1789593, at *3 (N.D.N.Y. Apr. 26, 2013)

As to plaintiff's cause of action under the Administrative Procedure Act of 1946, 5 U.S.C. §551, *et seq.*, plaintiff's claims are without merit because there is no requirement to provide substantive due process or a Court order as there is no constitutionally-protected right involved. *See* Compl. at 16. Further, the Administrative Procedure Act applies only to federal agencies. *See* 5 U.S.C.A. § 701. None of the named defendants are federal agencies. The Second Circuit rejected the theory that a state agency could be a quasi-federal agency for purposes of the Administrative Procedure Act. *See New York v. Atl. States Marine Fisheries Comm'n*, 609 F.3d 524, 534-35 (2d Cir. 2010) (though concluded that it did not apply in this case).

Plaintiff also claims, in the "title" section on the first page of his complaint that defendants collectively violated the "Constitution's Spending Clause, Article I, Section 8, Clause 1. Compl. at 1. Plaintiff's only other mention of the Spending Clause is within his *Monell* cause of action wherein he claims that the State of New York, County of Greene, and Town of Cairo's alleged policy, custom, or practice of applying/enforcing an

unconstitutional definition of motor vehicle, which violates his and others; substantive due process, "violates the United States Constitution's spending clause regarding federal funding." Compl. at 22.[16] In addition to the grounds for dismissal above, as the undersigned concluded that the plaintiff has stated no constitutional violation, such claim is also subject to dismissal for failure to state a claim upon which relief can be granted and frivolity.

Addressing plaintiff's *Monell* claims, he also only conclusorily pleads the existence of a formal policy or custom. *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015) ("[M]ere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details."). "Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, *see Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), a complaint does not 'suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiff bases his claim upon the collective defendants'[17] "policy" to "misinterpret" the definition of "motor vehicle" and the failure to train employees on the "proper" definition of motor vehicle or traveling versus driving. Compl. at 22-23. However, as the undersigned has concluded that the underlying claims are without

---

[16] Plaintiff does not indicate that he is seeking to bring a claim as a federal taxpayer for an alleged violation of the Spending Clause, Article I, Section 9, Clause 1, of the United States Constitution or that he is challenging the exercise of congressional power under the taxing and spending clause.

[17] Plaintiff further fails to demonstrate how, the State of New York, a nonmunicipal entity can be held liable under *Monell*.

merit, any claims grounded in *Monell* for the existence of a policy/custom or failure to train are without force and must be similarly dismissed as frivolous and for failure to state a claim upon which relief can be granted.

As for plaintiff's libel, slander, intentional infliction of emotional distress, and false imprisonment claims, as the undersigned recommends dismissal of all federal claims, the undersigned further recommends that the Court decline to extend supplemental jurisdiction to review these claims.  "Where, as here, a plaintiff's federal claims will be dismissed before trial, a district court should generally decline to exercise supplemental jurisdiction over any state law claims absent exceptional circumstances." *B.A. v. City of Schenectady Sch. Dist.*, 209 F. Supp. 3d 515, 528 (N.D.N.Y. 2016).[18]  Even if, *arguendo*, the Court were to reach these state law claims, because plaintiff bases his claims for libel, slander, intentional infliction of emotional distress, and false imprisonment on the allegation that defendants' interpretation and application of the term "motor vehicle" and "traveling" versus "driving" violates his constitutional rights, and that claim is entirely without merit, these state law claims fail to state claims upon which relief could be granted and are frivolous.

Insofar as plaintiff seeks to proceed pursuant to various provisions of New York State Penal Law, in addition to recommending that the Court decline to exercise supplemental jurisdiction over these claims, such claims must also be dismissed because plaintiff cannot seek the initiation of a criminal prosecution, an arrest, or

---

[18] Plaintiff refers to a 50h proceeding at which he contends he "was hoping for a resolution of the matter." Compl. at 15.  Although the exact claims in this state court proceeding are unclear, to the extent plaintiff may possibly seek review in of the unsuccessful outcome of any such proceeding in this Court, it is well-settled that this Court cannot perform what is, in effect, an appellate review of such state court judgment under *Rooker-Feldman*.  *See McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010).

enforcement of any state penal law.  *See Leeke v. Timmerman*, 454 U.S. 83, 86-87

(1981) (holding that there can be no private initiation of a criminal prosecution or arrest);

*see also McFadden*, 2013 WL 1789593, at *3 (affirming that there is no private right of

action to enforce state or federal criminal statutes).  Accordingly, in addition to

recommending dismissal of the complaint against New York State for sovereign

immunity and the remainder in its entirety for frivolity, plaintiff's state law claims for

assault, robbery in the second degree, coercion in the third degree, and official

misconduct also may be dismissed for failure to state a claim.

## IV. **Conclusion**

In sum, plaintiff's complaint, insofar stated against the State of New York and the

state officials in their official capacities for monetary damages, is barred by sovereign

immunity.  The remainder of plaintiff's complaint should be dismissed as frivolous as it

"is based on an indisputably meritless legal theory,'" *Livingston*, 141 F.3d at 437, and for

failure to state a claim upon which relief can be granted.  Generally, "[a] pro se

complaint should not be dismissed without the Court granting leave to amend at least

once when a liberal reading of the complaint gives any indication that a valid claim

might be stated."  *Gerken*, 2024 WL 4608307, at *15 (quoting *Nielsen v. Rabin*, 746 F.3d

58, 62 (2d Cir. 2014) (citation and internal quotation marks omitted)).  "However, if the

problems with a complaint are 'substantive' rather than the result of an 'inadequately or

inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be

denied.'"  *Id.* (citing *Edwards v. Penix*, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019)

(quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).  Here, the deficits in

plaintiff's complaint are substantive and cannot be cured by a better pleading; thus, it is recommended that plaintiff not be afforded an opportunity to amend.

For the reasons set forth herein, it is hereby:

**ORDERED**, that plaintiff's in forma pauperis application, dkt. no. 2, is, **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's complaint, insofar asserted against the State of New York and against the following individual defendants in their official capacities for monetary damages, Schrader, Raynor, Marriott, Kusminsky, Schroeder, Groden, Watts, Kaplan, Stanzione, Sandleitner, Scaturro, and Christman, *see generally* dkt. no. 1, be dismissed without prejudice[19] and without leave to amend on sovereign immunity grounds,[20] 28 U.S.C. § 1915A(b)(2), § 1915(e)(2)(B)(iii); and it is further

**RECOMMENDED**, that the remainder of plaintiff's complaint, Dkt. No. 1, be **DISMISSED** in its entirety with prejudice and without opportunity to amend based on frivolity and failure to state a claim upon which relief can be granted, 28 U.S.C. § 1915(e)(2)(B)(i), (ii); and it is further

**RECOMMENDED**, that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims; and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with Local Rules.

---

[19] Generally, when the Court lacks subject matter jurisdiction, a dismissal must be without prejudice. *See, e.g., Miller v. Brightstar Asia*, Ltd., 43 F.4th 112, 126 (2d Cir. 2022) ("A dismissal for lack of jurisdiction must be without prejudice rather than with prejudice.").

[20] Although dismissed based on sovereign immunity grounds, the dismissal as it relates to the State defendants may also be considered a dismissal based on frivolity.  *See, e.g., Canfield v. State of New York*, 6:24-CV-1357 (GTS/TWD), 2025 WL 1288747, at *2 (N.D.N.Y. May 5, 2025) (citing *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) ("[a] complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit'" in a case involving absolute immunity).

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[21]

Dated: May 20, 2025
　　　　Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge

---

[21] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  *See* FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal federal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal federal holiday.  *See id.* § 6(a)(1)(c).